UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ERICA ELIZABETH BISTOFF,

                    Plaintiff,        **No. 1:14-cv-00984(MAT)**
                                          **DECISION AND ORDER**
     -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

---

**INTRODUCTION**

Represented by counsel, Erica Bistoff ("Plaintiff") instituted this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying her application for Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

**PROCEDURAL STATUS**

Plaintiff filed an application for SSI on October 4, 2011, alleging disability beginning September 9, 1989, due to a learning disability, anxiety, depression, asthma, sleep apnea, an extremely

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

sensitive vestibular system, sensory integration problems, high risk for retinal detachment, phobia of school, short-term memory loss, and an auditory decoding deficit. (T.158).[2] After this application was denied on December 27, 2011, Plaintiff requested a hearing, which was held in Buffalo, New York, on January 11, 2012, before administrative law judge Curtis Axelsen ("the ALJ"). Plaintiff appeared with her attorney and testified. The ALJ did not call any witnesses. On March 8, 2013, the ALJ issued an unfavorable decision, finding that she was not under a "disability" as defined by the Act from, October 4, 2011,[3] the SSI application date, through the date of the ALJ's decision. (T.7-26). The Appeals Council denied Plaintiff's request for review on September 28, 2014, making the ALJ's decision the final decision of the Commissioner. (T.1-5). This timely action followed.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The record will be discussed in more detail below as necessary to the resolution of this appeal. For the reasons that

---

[2] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

[3] SSI cannot be paid prior to the date of a claimant's application. 20 C.F.R. § 416.501.

follow, the Commissioner's decision is affirmed.

**THE ALJ'S DECISION**

The ALJ followed the five-step procedure established by the Commissioner for evaluating disability claims. See 20 C.F.R. § 416.920.

At step one, the ALJ noted that Plaintiff has not engaged in substantial gainful activity since October 4, 2011, the application date.

At step two, the ALJ assessed Plaintiff as having the severe impairments: obesity, chronic sinusitis, obstructive sleep apnea and anxiety.

At step three, the ALJ determined that Plaintiff's impairments, while "severe" within the meaning of the Regulations, are not severe enough to meet or medically equal any impairments listed in the Listing of Impairments, see 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to proceeding to step four, the ALJ made a determination as to Plaintiff's residual functional capacity ("RFC"). The ALJ initially noted that the medical evidence does not support the existence of any significant exertional limitations and, in fact, would support the RFC to perform work at the medium exertional level. However, considering Plaintiff's obesity, the ALJ found that Plaintiff retains the RFC to perform work at the light exertional level, with the need to avoid respiratory triggers due to her

chronic sinus problems. The ALJ thus assessed Plaintiff has the RFC to perform "light work as defined in 20 C.F.R. 416.967(b) in a work environment free of excessive dust, fumes and respiratory irritants, [and] involving occasional contact with coworkers, supervisors and the public." (T.).

At step four, the ALJ found that Plaintiff has no past relevant work, was 22 years-old on the date the application was filed, and had a high school education.

At step five, the ALJ found that Medical-Vocational Rule 202.20 directed a finding of "not disabled" because the additional limitations caused by Plaintiff's nonexertional limitations have little or no effect on the occupational basis of unskilled light work. Accordingly, the ALJ entered a finding of not disabled.

## SCOPE OF REVIEW

A decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. See 42 U.S.C. § 405(g). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). This deferential standard is not applied to the Commissioner's application of the law, and the district court must independently determine whether the Commissioner's decision applied the correct legal standards in

determining that the claimant was not disabled. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). Therefore, this Court first reviews whether the applicable legal standards were correctly applied, and, if so, then considers the substantiality of the evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

## DISCUSSION

### I. RFC Not Supported by Substantial Evidence

#### A. Erroneous Reliance on Consultative Psychologist's Opinion

Plaintiff contends that Dr. Santarpia's evaluation and opinion[4] are invalid and cannot provide substantial evidence to support the RFC because Plaintiff's mother was present during the examination. Plaintiff asserts that since the crux of her anxiety disorder is that she cannot function in social settings without the presence of a trusted confidant, the consultative examination conducted in the presence of Plaintiff's mother failed to give an accurate picture of Plaintiff's limitations due to her anxiety.

Plaintiff, as the individual claiming disability, is in the

---

[4] Dr. Santarpia diagnosed depressive disorder, not otherwise specified ("NOS"); and anxiety disorder, NOS. (T.359). Dr. Santarpia concluded that Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, relate adequately with others, and appropriately deal with stress all within normal limits. (T.358). Dr. Santarpia noted a mild impairment in Plaintiff's ability to perform complex tasks independently and make appropriate decisions, but these difficulties were caused by distractibility, not by anxiety-related symptoms. (T.358). Although the results of the evaluation appeared to be consistent with psychiatric problems, Dr. Santarpia found that they were not significant enough to interfere with Plaintiff's ability to function on a daily basis. (T.359).

-5-

best position to know the details of her symptomatology. However, neither Plaintiff nor her mother communicated to Dr. Santarpia her alleged dependence on having her mother or boyfriend present in order for her to function in a social setting. Plaintiff's belated contention that remand is warranted on the basis that Dr. Santarpia's opinion is inaccurate since Plaintiff's mother was present during the examination. This ignores the principle, articulated in the Regulations, that a claimant's attorney has the obligation "to assist the claimant in bringing to [the ALJ's] attention everything that shows that the claimant is disabled." 20 C.F.R. § 404.1740(b)(1). It was therefore incumbent on Plaintiff's attorney to ensure that the consultative examination was conducted so as to provide an accurate and complete picture of Plaintiff's limitations.

### B. Erroneous Assessment of Credibility

Plaintiff argues that in formulating the RFC assessment, the ALJ failed to consider her inability to deal, independently, with work-related stress, due to her anxiety.

When an individual has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged but the objective evidence does not substantiate the alleged intensity and persistence of the symptoms, the ALJ must consider other factors in assessing the individual's subjective symptoms, including (1) the claimant's daily activities; (2) the nature,

duration, frequency and intensity of her symptoms; (3) precipitating and aggravating factors; (4) the type of medication and other treatment or measures which the claimant uses to relieve pain and other symptoms; (5) treatment other than medication the claimant has received for relief of pain and other symptoms; (6) any other measures used by the claimant to relieve pain and other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). A claimant's subjective assertions of pain or other limitations, standing alone, cannot ground a finding of disability. 20 C.F.R. § 416.929(a). In determining "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record, the ALJ must consider "[s]tatements [the claimant] or others make about [her] impairment(s), [her] restrictions, [her] daily activities, [her] efforts to work, or any other relevant statements [she] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings." 20 C.F.R. § 416.912(b)(3).

To support her allegations regarding her inability to deal independently with work-related stress, Plaintiff points to her testimony and statements to her treating therapist, Ms. Labin,

indicating that the presence of her boyfriend and her mother were necessary for her to engage in normal social interaction. (T.39). For instance, Plaintiff testified, she could hang out with her boyfriend's friends, but only if her boyfriend was present. When she left the house for any reason other than to spend time with her boyfriend, she would have to have her mother present. (T.39). If she was in a place that became too crowded, she would have to leave in order to avoid a panic attack. (T.40).

The ALJ found, after considering the record as a whole, that Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of her anxiety symptoms (e.g., panic attacks and fear of dying) were not entirely credible. For instance, the anxiety symptoms reported by Plaintiff to consultative psychologist Dr. Susan Santarpia during the December 8, 2011, examination were inconsistent with Plaintiff's allegations about her inability to engage in social interactions unless accompanied by her mother or boyfriend. (T.356). Plaintiff reported panic attacks only when driving. (T.357). She reported socializing with her boyfriend and family. (T.358). She enjoyed video games and computers, and she spent her days watching television, listening to the radio, reading, and going out with her boyfriend. (T.358).

Although Plaintiff has attended therapy at Brightside Counseling, she has not been prescribed any psychotropic medications. (T.356). The relatively conservative nature of

Plaintiff's treatment for her alleged social phobia suggests that the symptoms from her mental impairments are not as debilitating as she describes. See F.S. v. Astrue, No. 1:10-CV-444 MAD, 2012 WL 514944, at *20 (N.D.N.Y. Feb. 15, 2012) ("The Commissioner may discount a [claimant]'s testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and activities during the relevant period.") (citing Howe-Andrews v. Astrue, No. CV-05-4539(NG), 2007 WL 1839891, at *10 (E.D.N.Y. June 27, 2007) ("[T]he Commissioner discounted [the claimant]'s testimony and affidavit to the extent that they were inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. This conclusion was based on substantial evidence. . . . As a result, the Commissioner was not in error in considering but ultimately rejecting [the claimant]'s complaints and allegations of limitations.")).

Plaintiff herself has expressed interest in working, and other healthcare professionals have recommended that she enroll in vocational training or simply find a job. For instance, on January 17, 2012, she reported to treating therapist Ms. Labin that she had begun to see a different therapist about her intimate relationship issues; this therapist told her to get a job. (T.464). Ms. Labin and Plaintiff then discussed Plaintiff's anxiety related to working, and Plaintiff expressed that she would like to work in the pet grooming field, but not in a store, due to the fast pace and

need to count money. (T.464). Consultative psychologist Dr. Santarpia recommended, in addition to continued psychological treatment as currently provided, enrollment in vocational training/rehabilitation. See Stevenson v. Berryhill, No. 1:16-cv-00379(MAT), (W.D.N.Y. May 31, 2017), Decision & Order at 16 ("[T]he Court notes that [the claimant]'s allegations of severe difficulties in the context of social interaction are inconsistent with treatment records from various providers such as Dr. Santa Maria and Dr. Fabiano, who both stated that [the claimant] was a good candidate for vocational training, thus indicating a greater degree of work-related functional ability than contemplated by [the claimant]'s testimony.") (citing Poupore v. Astrue, 566 F.3d 303, 305-06 (2d Cir. 2009) (ALJ's determination that claimant was not disabled was supported by substantial evidence, including report of claimant's treating physician stating that claimant would be an excellent candidate for vocational rehabilitation)).

As discussed above, the Court finds substantial support in the record for the ALJ's decision to discredit Plaintiff's subjective statements that her symptoms were so severe as to be disabling within the meaning of the Act. "On appeal, the court's proper function is merely to determine whether the appropriate legal standards have been applied and assess whether the [Commissioner]'s findings of fact are supported by substantial evidence." Mimms v. Heckler, 750 F.2d 180, 185–86 (2d Cir. 1984). "[W]hether there is

substantial evidence supporting the [claimant]'s view is not the question." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 Fed. Appx. 58, 59 (2d Cir. 2013) (unpublished opn.). Rather, the question for the reviewing court is "whether substantial evidence supports the ALJ's decision." <u>Id.</u> Here, that standard has been met.

**II. Erroneous Reliance on the Medical-Vocational Guidelines**

Plaintiff contends that the ALJ improperly relied on Medical-Vocational Rule 202.20 as a framework for decision-making at step five. Plaintiff asserts that additional vocational evidence, such as testimony from a vocational expert, was required because her nonexertional limitations significantly erode the occupational base of unskilled light and sedentary work.

At step five, the Commissioner has "the burden of proving that the claimant still retains an RFC to perform alternative substantial gainful work which exists in the national economy." <u>Bapp v. Bowen</u>, 802 F.2d 601, 604 (2d Cir. 1986) (citations omitted). "In the ordinary case the [Commissioner] satisfies [her] burden by resorting to the applicable medical vocational guidelines (the [G]rids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 . . . ." <u>Id.</u> The Grids reflect the presence of a significant number of unskilled jobs at each exertional level in the national economy, 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(b), namely, approximately 1,600 separate sedentary and light unskilled occupations. 20 C.F.R. Part 404, Subpt. P, App. 2, § 202.00(a). If a claimant's RFC does

not coincide with the definition of one of the ranges of work because she has nonexertional limitations that may erode the occupational base, the Commissioner uses the Grids as a framework to determine whether the claimant can still do a significant number of jobs. Zabala v. Astrue, 595 F.3d 402, 410-11 (2d Cir. 2010) (citing Bapp, 802 F.2d at 605). The Second Circuit has consistently held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert [ ]or preclude reliance on the [grids]," Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986). "Rather, 'the testimony of a vocational expert . . . that jobs exist in the economy which claimant can obtain and perform' is required only where the 'claimant's nonexertional impairments significantly diminish [her] ability to work—over and above any incapacity caused solely from exertional limitations—so that [s]he is unable to perform the full range of employment indicated by the [grids].'" Calabrese v. Astrue, 358 Fed. Appx. 274, 275-76 (2d Cir. 2009) (unpublished opn.) (quoting Bapp, 802 F.2d at 603; ellipsis and brackets in original); accord, e.g., Zedanovich v. Astrue, 361 Fed. Appx. 245, 246 (2d Cir. 2010) (unpublished opn.). The need for a vocational expert is assessed "on a case-by-case basis[,]" Bapp, 802 F.2d at 605, asking whether the "additional loss of work capacity . . . so narrows a claimant's possible range of work as to deprive [her] of a meaningful employment opportunity," id. at 606.

As noted above, the ALJ found that Plaintiff had the RFC to perform light work with the following nonexertional limitations: (1) only occasional contact with coworkers, supervisors, and the public; (2) a work environment free of excessive dust, fumes, and respiratory irritants. (T.14). The ALJ then considered Plaintiff's RFC together with her vocational profile of age (younger individual), education (high school), and work experience (transferability of skills was not material), and used Grid Rule 202.20 as a framework to conclude that Plaintiff was not disabled. (T.20-21); see also 20 C.F.R. §§ 416.960(c), 416.963-65, 416.969; 20 C.F.R. Part 404, Subpt. P, App. 2, § 202.20.

The ALJ did not err in determining that Plaintiff's nonexertional impairments did not "so narrow[ ] [her] . . . possible range of work as to deprive [her] of a meaningful employment opportunity," Bapp, 802 F.2d at 606. First, with regard to the limitations due to her sinus problems, SSR 85-15 provides that "[w]here a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc." Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8 (S.S.A. 1985).

Second, with regard to Plaintiff's nonexertional impairment

pertaining to only "occasional"[5] contact with other people, SSR 85-15 states that "unskilled jobs at all levels of exertion . . . ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis." SSR 85-15, 1985 WL 56857, at *4. The Commissioner argues that because unskilled jobs do not involve dealing "primarily" with people, the ALJ's restriction of Plaintiff to only "occasional" contact with coworkers, supervisors, and the public during an 8-hour workday does not "so narrow[ ] [her] . . . possible range of work as to deprive [her] of a meaningful employment opportunity," Bapp, 802 F.2d at 606.

Here, the ALJ conducted the required analysis, finding that

> the additional limitations have little or no effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework of this rule. Social Security Ruling 96-9p, indicates that the sedentary occupational base (and by implication heavier exertional levels) is not significantly eroded, if an individual retains the ability to hear and understand simple oral instructions or to communicate simple information. The claimant certainly retains at least these abilities.

---

[5] SSR 83-10 defines "occasionally" as "occurring from very little up to one-third of the time[,]" i.e., "no more than about 2 hours of an 8-hour workday." Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983).

(T.21). Because the ALJ analyzed whether Plaintiff's nonexertional impairments "significantly eroded" her occupational base, and found that they had "little or no effect," he did "not commit legal error by relying on the Grid in making his determination and not obtaining the testimony of a vocational expert." Ulloa v. Colvin, No. 13 CIV. 4518 ER, 2015 WL 110079, at *15 (S.D.N.Y. Jan. 7, 2015) (citing Selian v. Astrue, 708 F.3d 409, 422 (2d Cir. 2013) (remanding so that ALJ could determine whether or not claimant's nonexertional limitations were negligible); Howe v. Colvin, 12 Civ. 6955(JPO)(SN), 2013 WL 4534940 at *18 (S.D.N.Y. Aug. 27, 2013) (agreeing with report and recommendation finding ALJ did not commit legal error when using the Grids as a framework and finding claimant's nonexertional limitations had "little or no effect on the occupational base of unskilled sedentary work"); other citations omitted);[6] see also Wasiewicz v. Colvin, No. 13-CV-1026-S, 2014 WL 5465451 at *6 (W.D.N.Y. Oct. 28, 2014) (finding no error in ALJ's reliance on Grids where claimant retained RFC for light work with no more than occasional contact with the public, coworkers, or supervisors); Hurd v. Astrue, No. 10-CV-1116, 2013 WL 140389, at *4 (N.D.N.Y. Jan. 11, 2013) (finding

---

[6] "Whether the ALJ's decision not to use a vocational expert was appropriate given the evidence in the record is a separate question and need not be addressed here, since '[o]nly after finding that the correct legal standards were applied should the Court consider the substantiality of the evidence.'" Ulloa, 2015 WL 110079, at *15 (quoting Calabrese v. Astrue, 592 F. Supp.2d 379, 385 (W.D.N.Y. 2009), aff'd, 358 Fed. Appx. 274 (2d Cir. 2009) (summary order); brackets in original).

no error in ALJ's reliance on Grids where claimant retained RFC for light work with limitations including occasional interaction with co-workers, little to no contact with the general public, and avoidance of concentrated exposure to respiratory irritants).

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error. Therefore, the Court affirms the Commissioner's decision denying benefits, grants Defendant's motion for judgment on the pleadings, and denies Plaintiff's motion for judgment on the pleadings. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/ Michael A. Telesca**

_____
  HON. MICHAEL A. TELESCA
  United States District Judge

Dated:   June 27, 2017
         Rochester, New York.